**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

JEFFERY HARRIS,                :

     Petitioner,            :

vs.                       :     CA 19-0297-KD-MU

WARDEN GARY WILLIAMS,     :

     Respondent. [1]

## REPORT AND RECOMMENDATION

Jeffery Harris has petitioned this Court for federal habeas corpus relief pursuant to 28 U.S.C. § 2254. (Doc. 1). This matter has been referred to the undersigned for the entry of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72, and General Local Rule 72(a)(2)(R). It is recommended that the instant petition, as amended (*see* Docs. 13 & 14), be dismissed because to the extent Harris has alleged viable constitutional claims sounding in habeas corpus, this Court is procedurally barred from reaching the merits of those claims.

## FACTUAL BACKGROUND

On September 20, 2017, a jury of Harris's peers returned a verdict finding him guilty of one count of attempt to distribute cocaine, one count of attempt to distribute

---

[1]     Jeffery Harris is no longer housed in a facility run by the Alabama Department of Corrections but, instead, is an individual living in the free world (*see* Doc. 18 ("I have been released from Alabama Department of Corrections [and] my current address is [] 2001 [B]rill [R]d[.], [A]pt[.] [H]-7, Mobile, Al 36605.")). Nevertheless, Warden Williams remains as the proper respondent in this case since he was the warden of the facility in which Harris was last held.

marijuana, one count of possession of cocaine, one count of possession of marijuana,

and one count of intent to deliver a cellphone to an inmate (Doc. 11-5, PageID. 706-07;

*see also id.,* PageID. 707-08 (polling of the jury)), and on November 1, 2017, he was

sentenced to concurrent 130-month terms of imprisonment (*id.*, PageID. 767-68).

The August 10, 2018, memorandum decision of the Alabama Court of Criminal

Appeals on Harris's direct appeal, *see Harris v. Alabama,* 274 So.3d 304 (Ala.Crim.App.

2018), contains a summary of the evidence produced at trial.

> The evidence adduced at trial tended to establish the following. On the afternoon of May 9, 2016, Officer Michael Banks, an investigative officer with the Alabama Department of Corrections, left work at Holman Prison and saw a black vehicle pulled over on the shoulder of the road. After he drove several yards past the vehicle, Officer Banks saw a male, who was later identified as Adrian Pritchett, get out of the passenger side of the vehicle with a package in his hand. Officer Banks watched as Pritchett walked into the wooded area near the prison and then returned to the vehicle without the package. Officer Banks was aware of problems with people introducing contraband into the prison facility by leaving it in the woods for inmates to pick up later so he decided to detain Pritchett. At that time, the driver of the vehicle, who was later identified as Harris, got out of the vehicle and walked toward Officer Banks. Officer Banks directed Harris to get back into the vehicle, which he did. As Officer Banks detained Pritchett, Harris left the scene. Officer Banks then notified his supervisor what had just occurred and requested backup.

> Correctional officers from Fountain Prison, which is close to Holman Prison, responded to the request for backup. They located Harris and his vehicle just as it began to turn onto the main highway leading from Holman Prison. At that point, they detained Harris. No testimony was presented that drugs or other contraband was found either on Harris or in the vehicle he had been driving.

> Agent Deputy W. D. Favor with the Alabama Department of Corrections Investigation and Intelligence Division testified that a cursory search near where Pritchett had gone into the woods was conducted. As a result of that search, law enforcement officers located a blue "birthday" bag containing two "football-size[d]" packages "wrapped in black tape." (R. 239-41.) It was later determined that th[e] package contained 24.07 grams

of marijuana, 5.44 grams of cocaine, "Newport" [] cigarettes, several cellular telephones and chargers, and super glue.[2]

On July 29, 2016, Harris was indicted by the Escambia County grand jury for attempt to commit a controlled-substance crime (distribution of cocaine), see §§ 13A-4-2, -12-203, and -12-211, Ala. Code 1975; attempt to commit a controlled-substance crime (distribution of marijuana), see §§ 13A-4-2, -12-203, and -12-211, Ala. Code 1975; unlawful possession of a controlled substance (cocaine), see § 13A-12-212(a)(1), Ala. Code 1975; first-degree unlawful possession of marijuana, see § 13A-12-213, Ala. Code 1975; and intent to deliver a cellular telephone to an inmate, see § 14-11-50(a), Ala. Code 1975. At a pretrial conference on September 18, 2017, Harris moved to dismiss the indictment on the ground that the two counts of possession were lesser-included offense of the two counts of attempted distribution. Following a hearing, the circuit court denied that motion.

On September 20, 2017, a jury found Harris guilty of all counts as charged in the indictment.

*Harris,* 274 So.3d at 305-06.

Appellate counsel for Harris raised one issue on direct appeal, namely, whether possession is a lesser-included offense under an attempted distribution charge, thereby depriving the court of jurisdiction to convict on both charges when the possession charges arise out of the same incident as the attempted distribution charges. (*See* Doc. 11-6, PageID. 820). In its opinion released on August 10, 2018, the Alabama Court of Criminal Appeals framed the issue more succinctly as whether Harris' "possession convictions are lesser-included offenses of his attempted-distribution convictions and violate the prohibition against double jeopardy." *Harris,* 274 So.3d at 306. After recognizing the State's agreement with Harris and its position that Harris' convictions for

---

[2] "Agent Deputy W.D. Favor explained that '[inmates] take the backing off of [the cellular telephone] and put super glue on it and stick it to the bottom of the metal bunk beds,' in an effort to avoid discovery of the phones by prison personnel. (R. 241.)" *Harris,* 274 So.3d at 305 n.1.

unlawful possession of cocaine and unlawful possession of marijuana should be vacated, the Alabama Court of Criminal Appeals agreed with both Harris and the State. *See id.* Alabama's criminal appellate court explained why possession of cocaine and possession of marijuana were lesser-included offenses of attempted distribution of cocaine and attempted distribution of marijuana in Harris' case, *see id.* at 306-10, and also explained that "[b]ecause Harris was convicted of both greater offenses and lesser offenses included within those greater offenses, his convictions for both attempted distribution and possession violate double-jeopardy principles." *Id.* at 310. Accordingly, Harris' case was "remanded with instructions to the circuit court to vacate Harris's convictions and sentences for possession of marijuana and possession of cocaine. Due return shall be made to this Court within 42 days of the date of this opinion." *Id.*

Several days later, on August 15, 2018, Escambia County Circuit Judge Bert W. Rice entered an order on remand, vacating Harris' possession of marijuana and possession of cocaine convictions (and sentences) and further noting that the sentences previously imposed on all remaining counts of conviction "remain binding" because those convictions were not reversed. (Doc. 11-9, PageID. 894). On return to remand, the Alabama Court of Criminal Appeals entered an unpublished memorandum opinion on October 5, 2018, dismissing Harris' appeal because he had received the relief he requested when the circuit court entered its August 15, 2018 order vacating his possession of marijuana and possession of cocaine convictions and sentences. (Doc. 11-10, PageID. 897-98). Harris' January 21, 2019 application for rehearing (Doc. 11-11,

PageID. 899-901)[3] was stricken, on January 28, 2019, "for failure to file a timely application." (Doc. 11-12, PageID. 904). In addition, Harris' February 6, 2019 petition for writ of certiorari to the Alabama Supreme Court (Doc. 11-13, PageID. 907-09), which Harris' own cover letter described as untimely (*id.,* PageID. 905), was stricken as untimely filed on February 12, 2019 (Doc. 11-14, PageID. 911). In his cover letter, Harris laid blame for the untimely filing of his petition for writ of certiorari **and** for the untimely filing of his application for rehearing in the Alabama Court of Criminal Appeals at the feet of his attorney, whom he asserted filed a notice of appeal in the Alabama Court of Criminal Appeals following remand proceedings rather than filing an application for rehearing. (*See* Doc. 11-13*,* PageID. 905-06).[4]

---

[3]     Harris argued in his application for rehearing that the Escambia County Circuit Court's action on remand in noting that all sentences imposed on Counts 1, 2 and 5 remain "binding" was an abuse of discretion because his 130-month concurrent sentences on all counts relied on "materially false information[,]i.e.[,] counts 3 and 4." (Doc. 11-11, PageID. 899-900). It was Harris' position that because the vacated "counts" were utilized in determining the sentencing guidelines, he should have been resentenced without consideration of those counts. (*See id.,* PageID. 900-01).

[4]     To be sure, it is clear that on September 14, 2018, Harris' appellate attorney filed a motion to have the trial court reconsider its order on remand and set the matter for a new sentencing hearing. (Doc. 11-16, PageID. 913-15). Counsel made the same argument that Harris made in his application for rehearing, namely, that because two of the sentences included in the Sentencing Guidelines calculations used at the original sentencing have since been vacated, the court should reconsider its remand order and set the matter down for a new hearing. (*Id.,* PageID. 914; *see also id.* ("Although the sentencing range recommended under the Sentencing Guidelines may not change[] after the two counts are vacated, the Court has discretion to sentence anywhere within the range, and the Court's decision to sentence at the top of the range is due to be reconsidered now that two of the counts have been vacated.")).

After hearing oral argument, the trial court entered an Order on November 13, 2018, denying the motion to reconsider order upon remand. (Doc. 11-17, PageID. 916). Harris appealed this denial and filed a response to the appellate court's December 28, 2018, order to show cause why the appeal should not be dismissed as non-appealable. (*See* Doc. 11-15, PageID. 912).  On March 6, 2019, the Alabama Court of Criminal Appeals entered an Order dismissing Harris' appeal and, that same day, issued a certificate of judgment. (*See id.*).

(Continued)

Harris filed his petition for writ of habeas corpus in this Court on or about April 18,

2019. (*See* Doc. 1). Thereafter, on June 5, 2019, Harris filed a Rule 32 petition in the

Circuit Court of Escambia County, Alabama collaterally attacking his remaining

convictions and sentences. (*See* Doc. 17-2, PageID. 997-1059). Concurrent with the

filing of the Rule 32 petition, Harris filed a motion to proceed without prepayment of fees

and costs; the trial court denied Harris' *in forma pauperis* motion on June 6, 2019 and

ordered him to pay the filing fee (*compare* Doc. 14-2, PageID. 937 (trial court's June 6,

2019, order denying Harris' request to proceed *in forma pauperis*) *with* Doc. 17-1,

PageID. 996)). When Harris did not pay the filing fee as ordered, the Circuit Court of

Escambia County, Alabama dismissed his Rule 32 petition on July 12-13, 2019. (*Id.*).

Harris then filed a petition for writ of mandamus in the Alabama Supreme Court on or

about August 5, 2019 (*compare id. with* Doc. 17-3, PageID. 1060 n.1). The Alabama

---

In his response to the show-cause order, Harris argues that the matter sub judice is analogous to when an individual has been sentenced under the Habitual Felony Offender Act and one or more of the prior convictions used to enhance that sentence is subsequently vacated. In McClintock v. State, 773 So.2d 1057 (Ala. Crim. App. 2000), this Court held that fundamental fairness in such a situation requires a new sentencing hearing so that it may be established with certainty that the defendant had been properly sentenced. In McClintock, however, the appellant had filed a Rule 32 petition for postconviction relief challenging his sentence.

"'An appeal cannot be taken from an order subsequent to the judgment of conviction unless authorized by statute.' Harris v. State, 44 Ala. App. 632, 632, 218 So.2d 285, 286 (1969). All statutes that authorize appeals are to be strictly construed. See Wood v. Birmingham, 380 So.2d 394 (Ala. Crim. App. 1980)." Dixon v. City of Mobile, 859 So.2d 462, 463 (Ala. Crim. App. 2003). This Court knows of no statute or rule that authorizes Harris's appeal. The proper avenue, if any, for Harris to seek relief would be by filing a petition for postconviction relief pursuant to Rule 32, Ala.R.Crim.P. Accordingly, this appeal is due to be, and is hereby, **DISMISSED.** It is further ordered that the certificate of judgment shall issue forthwith.

(Doc. 11-18, PageID. 918).

Supreme Court transferred Harris' mandamus petition to the Alabama Court of Criminal Appeals on August 7, 2019. (*Id.; see also* Doc. 14-2, PageID. 941 (August 7, 2019, order of transfer)). While the petition for writ of mandamus was pending in the Alabama Court of Criminal Appeals, Harris attempted to amend his IFP declaration in the trial court; however, the trial court disallowed/denied the amendment (*compare* Doc. 17-1, PageID. 996 *with* Doc. 14-2, PageID. 935 ("On August 26, 2019 the Escambia County Circuit Court Judge Jeffery White did issue an order denying petitioner[']s Amended in Forma Pauperis Declaration.")). Harris then filed a supplement amendment to his writ of mandamus on August 29, 2019. (Doc. 14-1, PageID. 928; *compare id. with* Doc. 17-1, PageID. 996). On September 11, 2019, the Alabama Court of Criminal Appeals entered an order denying Harris' petition for writ of mandamus. (Doc. 17-3, PageID. 1060 (in the petition, Harris requested that the Alabama Court of Criminal Appeals order Circuit Judge Jeffrey A. White "to grant his request for indigency status so that he may file his Rule 32 petition for postconviction relief without prepaying the filing fee.")).

> Currently, the fee for filing a Rule 32 petition for postconviction relief in the Escambia Circuit Court is $292. Harris's inmate account summary shows that in the 12 months preceding the filing of the Rule 32 petition he had deposits to his inmate account in the amount of $673. Harris could have saved the money to pay the filing fee and is not indigent. See Ex parte Wyre, 74 So.3d 479, 482 (Ala. Crim. App. 2011). Accordingly, this petition is hereby **DENIED**.

(*Id.*).

It is difficult to understand all the claims Harris raises in his habeas corpus petition (Doc. 1), as amended (*see* Docs. 13 & 14-1); however, the undersigned appreciates that Harris raises the following claims: (1) his Fourteenth Amendment rights to due process and equal protection of the law have been violated due to the failure of

the State to afford him adequate judicial process to remedy federal constitutional violations in his criminal prosecution (Doc. 1, PageID. 5; *see also* Doc. 14-1, PageID. 927); (2) his Fourteenth Amendment right to due process was deprived when he was denied meaningful access to the courts (Doc. 1, PageID. 5; *see also* Doc. 13, PageID. 921); (3) his appellate attorney's constitutionally deficient performance in failing to timely seek rehearing and petition the Alabama Supreme Court for writ of certiorari relegated his double jeopardy claim to a discretionary process and the likelihood that it is barred before the federal courts (Doc. 13, PageID. 922);[5] (4) he is actually innocent of the crimes for which he was convicted (*compare* Doc. 1, PageID. 14-24 *with* Doc. 13, PageID. 921 & 923); and (5) he was denied "counsel to assist in his filing of [a] Rule 32 petition, pre[-]petition discovery for claims of **actual innocence** and prosecutorial misconduct, motion to compel trial attorney to provide him with client file and an inadequate law library to assist in the preparation of his claims and procedural preclusions which prevent certain claims from being raised hence inadequate judicial remedy." (Doc. 13, PageID. 923) (emphasis in original). The only relief sought by Harris in his habeas corpus petition is "immediate release." (Doc. 1, PageID. 25).

On October 24, 2019, Harris advised this Court that he had been released from the Alabama Department of Corrections and now lives in the free world. (*See* Doc. 18, PageID. 1061 (advising that his address is 2001 Brill Road, Apt. H-7, Mobile, AL 36605)). A call to Central Records at the Alabama Department of Corrections reveals that Harris was released on parole on October 11, 2019 and, further, that he reached

---

[5]     Petitioner also appears to suggest that his appellate counsel should have requested resentencing in her brief on appeal and should have raised other claims which he does not specifically delineate. (*See* Doc. 1, PageID. 9 & 10).

the end of his parole (that is, his end-of-sentence with respect to his parole) on July 19, 2020. This Court has not heard from Harris since being advised by him in October of 2019 that he had been released from prison (*compare* Doc. 18 *with* Docket Sheet).

## **CONCLUSIONS OF LAW**

A.     **"In Custody" Requirement**.     The undersigned raises the jurisdictional "in custody" requirement *sua sponte* in light of Harris' notification to the Court in October of 2019 that he had been released from prison (Doc. 18) and subsequent information gleaned from the Alabama Department of Corrections that Petitioner was released on parole and that his parole term has expired.

> Federal courts have jurisdiction to consider a habeas petition from a petitioner "in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3). The "in custody" requirement is jurisdictional. *Stacey v. Warden, Apalachee Corr. Inst.,* 854 F.2d 401, 403 (11th Cir. 1988) (per curiam). "[A] federal habeas petitioner must be 'in custody' under the conviction or sentence under attack **at the time his petition is filed**." *See Diaz v. State of Fla., Fourth Judicial Circuit,* 683 F.3d 1261, 1264 (11th Cir. 2012) ("[A] petitioner in state custody may challenge the first of multiple, consecutive sentences imposed[,] even where the first sentence has already been served . . . .") . . . . However, the United States Supreme Court has emphasized that "although the phrase 'in custody' is construed broadly—a habeas petitioner cannot satisfy that requirement if he 'suffers no present restraint from' the conviction he seeks to challenge." *Boone v. Warden, Att'y Gen.,* 800 F. App'x 739, 740 (11th Cir. 2020) (per curiam) . . . .

*Leonard v. Inch,* 2021 WL 1842287, *4 (S.D. Fla. Apr. 12, 2021) (emphasis in original), *report and recommendation adopted,* 2021 WL 1840584 (S.D. Fla. May 7, 2021). Here, as was the case in *Leonard, supra,* Harris was "in custody" when he filed his initial habeas corpus petition (*see* Doc. 1) and his amendments thereto (*see* Docs. 13 & 14 (reflecting that Harris was incarcerated at Hamilton Community Work Center when he

filed those pleadings)); therefore, the jurisdictional prerequisite was met, and jurisdiction was not defeated by Harris' subsequent release from custody in October of 2019 while his petition was pending final adjudication. *See id.* at \*4. Therefore, dismissal is not appropriate on this basis.

      **B.**    <u>**Mootness**</u>. While the jurisdictional "in custody" prerequisite has been met, this Court must nonetheless determine whether Harris' habeas corpus petition is now moot.

> Article III of the United States Constitution extends federal judicial power only to cases or controversies. U.S. Const. art. III, § 2, cl. 1. "This case-or-controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate." *Lewis v. Cont'l Bank Corp.,* 494 U.S. 472, 477 (1990). The parties must continue to have a "personal stake in the outcome" of the lawsuit. *Id.* at 478 (quoting *Los Angeles v. Lyons,* 461 U.S. 95, 101 (1983)). In other words, a petitioner "must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable decision." *Id.* at 477.

> However, there is no longer an Article III case or controversy and a case or issue becomes moot where the injury for which an appellant seeks judicial redress is resolved or disappears prior to the court's decision. *See Burke v. Barnes,* 479 U.S. 361, 363 (1987) . . .; *Mattern v. Sec'y for Dep't of Corr.,* 494 F.3d 1282, 1285 (11th Cir. 2007) ("[A] habeas petitioner who has been released from imprisonment subsequent to his filing a § 2254 petition must establish that his petition still presents a case or controversy under Article III, § 2 of the United States Constitution, and therefore is not moot.").

*Leonard, supra,* at \*4-\*5.

      Based upon the information the undersigned has gathered from the Alabama Department of Corrections, it is clear that Harris' sentences expired while the instant habeas petition was awaiting adjudication; therefore, "'some collateral consequence must be present in order to satisfy the case-or-controversy requirement.'" *Leonard,* at \*5, quoting *Watkins v. Haynes,* 445 Fed.Appx. 181, 183 (11th Cir. 2011) (per curiam).

And while Petitioner appears to principally attack his sentences (*see, e.g.,* Doc. 1, PageID. 11-12), his petition, read liberally, also challenges his convictions (*see generally* Doc. 1). Accordingly, "his federal habeas petition is not rendered moot unless there is no *possibility* for the imposition of collateral legal consequences on the basis of the challenged conviction[s]." *Leonard, supra* (emphasis in original; citation omitted). As in *Leonard,* the question to be answered becomes "whether, notwithstanding Petitioner's unconditional release, adverse collateral consequences still exist." *Id.* at *5.

> The United States Supreme Court has made clear that "once the convict's sentence has expired, however, some concrete and continuing injury other than the now-ended incarceration or parole—some 'collateral consequence' of the conviction—must exist if the suit is to be maintained." [*Carafas*, 391 U.S.] at 237-38. "Collateral consequences" include the possible enhancement of a later criminal sentence or denial of the right to vote, serve on a jury, hold elective office, or hold a license to operate certain kinds of businesses. *Carafas,* 391 U.S. at 237-38 . . . . Indeed, when a criminal defendant or habeas petitioner challenges his *conviction*, as opposed to merely his expired *sentence,* federal courts *presume* the existence of collateral consequences staving off a dismissal for mootness. *See United States v. Juvenile Male,* 564 U.S. 932, 936 (2011); *Spencer,* 523 U.S. at 8; *Wolfe v. Coleman,* 681 F.2d 1302, 1305 (11th Cir. 1982); *Williams v. Carter,* 253 Fed.Appx. 914, 916 (11th Cir. 2007).

*Leonard, supra,* at *5.

While this Court has heard nothing from Harris since his release from prison, it also has not heard from the Respondent substantively (*see* Docket Sheet) and, certainly, the Respondent has at no time argued that Petitioner's federal habeas corpus petition is moot (*compare* Doc. 11 *with* Doc. 17). And since Respondent bears the burden of establishing mootness, *Leonard, supra,* at *5, citing *Malloy v. Purvis,* 681 F.2d 736, 739 (11th Cir. 1982), and has done nothing to carry his burden, the undersigned

necessarily presumes the existence of collateral consequences[6] thereby staving off dismissal for mootness.

**C.**     **Exhaustion of State Remedies and the Procedural Default Doctrine.**

Another threshold issue in a federal habeas corpus case brought by a state prisoner is whether the petitioner has properly raised the federal constitutional claims in the state courts, thereby exhausting all available state court remedies. 28 U.S.C. § 2254(b). The origins of the exhaustion requirement are found in principles of comity, "which protect the state court[]s['] role in the enforcement of federal law and prevent disruption of state court proceedings." *Jackson v. Estes,* 2015 WL 5117717, *8 (N.D. Ala. Aug. 28, 2015), citing *Rose v. Lundy,* 455 U.S. 509, 518, 102 S.Ct. 1198, 1203, 71 L.Ed.2d 379 (1982).[7]

---

[6]     For instance, one likely collateral consequence facing Harris is possible enhancement or a later criminal sentence.

[7]     The Supreme Court has long held

that a state prisoner's federal habeas petition should be dismissed if the prisoner has not exhausted available state remedies as to any of his federal claims. (citations omitted) This exhaustion requirement is also grounded in principles of comity; in a federal system, the States should have the opportunity to address and correct alleged violations of state prisoners' federal rights.

.       .       .

[A] habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance. A habeas petitioner who has defaulted his federal claims in state court meets the technical requirement for exhaustion; there are no state remedies any longer "available" to him.  (citations omitted) In the absence of the independent and adequate state ground doctrine in federal habeas, habeas petitioners would be able to avoid the exhaustion requirement by defaulting their federal claims in state court. The independent and adequate state ground doctrine ensures that the States' interest in correcting their own mistakes is respected in all federal habeas cases.

*Coleman v. Thompson,* 501 U.S. 722, 731 & 732, 111 S.Ct. 2546, 2554-2555 & 2555, 115 L.Ed.2d 640 (1991).

In order to exhaust his state remedies, a state prisoner who seeks federal habeas corpus relief must present the same claim to the state court that he presents to the federal court. *Picard v. Connor,* 404 U.S. 270, 275-76, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971). Thus, in order to exhaust state remedies, a petitioner must fairly present every issue raised in his federal petition to the state's highest court,[8] either on direct appeal or on collateral review.[9] *See Castille v. Peoples,* 489 U.S. 346, 351, 109 S.Ct. 1056, 1060, 103 L.Ed.2d 380 (1989) (quotation marks and citation omitted). In addition, the state court petition must make the state courts aware that the claims asserted do, in fact, raise federal constitutional claims. *See Snowden v. Singletary,* 135 F.3d 732, 735 (11th Cir. 1998).

"[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan v. Boerckel,* 526 U.S. 838, 842, 119 S.Ct. 1728, 1731, 144 L.Ed.2d 1 (1999). More precisely, "[b]ecause the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts, . . . state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Id.* 845, 119 S.Ct. at 1732; *see also Kelley v. Secretary for Dep't of Corrs.,* 377 F.3d 1317, 1344 (11th Cir. 2004) ("The petitioner must present his claims to the state courts such that they are permitted the 'opportunity to apply controlling legal principles to the facts bearing upon (his) constitutional claim.'"). If a petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established.

---

[8] And, of course, therefore, "[c]laims which have never been presented to a state court . . . are procedurally defaulted if presentation of the claims in state court would be barred by state procedural rules." *Sanchez v. Hetzel,* 2014 WL 1491178, *2 (M.D. Ala. Apr. 15, 2014) (citations omitted).

[9] Indeed, "[t]o challenge a conviction issued by an Alabama state court, a petitioner must assert the [federal] claim on direct appeal or in a Rule 32 proceeding, appeal any adverse ruling, seek rehearing in the Alabama Court of Criminal Appeals, and file a petition for writ of certiorari in the Alabama Supreme Court." *Shapley v. Thomas,* 2014 WL 4470700, *4 (N.D. Ala. Sept. 4, 2014) (citations omitted); *see Smith v. Jones,* 256 F.3d 1135, 1138 (11th Cir. 2001) ("[I]n order to exhaust state remedies as to a federal constitutional issue a petitioner is required to file a petition for discretionary review in the state's highest court raising that issue, if discretionary review is part of the appellate procedure in the state, [*O'Sullivan v. Boerckel,* 526 U.S.] at 845-47, 119 S.Ct. at 1732-34."), *cert. denied*, 534 U.S. 1136, 122 S.Ct. 1081, 151 L.Ed.2d 982 (2002).

*Id.* (footnotes added and footnote omitted). In other words, when a petitioner has procedurally defaulted a claim by failing to exhaust state court remedies that are no longer available, *see O'Sullivan, supra,* 526 U.S. at 848-49, 119 S.Ct. at 1734, a federal court is barred from reaching the merits of that claim unless the petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim[] will result in a fundamental miscarriage of justice." *Coleman, supra*, 501 U.S. at 750, 111 S.Ct. at 2565. The cause and prejudice standard applies "uniformly to all independent and adequate state procedural defaults." *Id.* at 750-751, 111 S.Ct. at 2565.

> In procedural default cases, the cause standard requires the petitioner to show that some objective factor external to the defense impeded counsel's efforts to raise the claim in state court. Objective factors that constitute cause include interference by officials that makes compliance with the state's procedural rule impracticable, and a showing that the factual or legal basis for a claim was not reasonably available to counsel. In addition, constitutionally [i]neffective assistance of counsel is cause. Attorney error short of ineffective assistance of counsel, however, does not constitute cause and will not excuse a procedural default. Once the petitioner has established cause, he must show actual prejudice resulting from the errors of which he complains.

> Federal courts retain the authority to issue the writ of habeas corpus in a further, narrow class of cases despite a petitioner's failure to show cause for a procedural default. These are extraordinary instances when a constitutional violation probably has caused the conviction of one innocent of the crime. We have described this class of cases as implicating a fundamental miscarriage of justice.

*McCleskey v. Zant*, 499 U.S. 467, 493-494, 111 S.Ct. 1454, 1470, 113 L.Ed.2d 517 (1991) (internal quotation marks and citations omitted).

In his answer (Doc. 11), as amended (Doc. 17), the respondent asserts that all of petitioner's claims are procedurally defaulted under *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999) due to Harris' failure to fairly present these

claims throughout "one complete round of the State's established appellate review process[,]" *id.* at 845, 119 S.Ct. at 1732 (*compare* Doc. 11, PageID. 19 *with* Doc. 17, PageID. 993). *Compare McNair v. Campbell,* 416 F.3d 1291, 1302 & 1305 (11th Cir. 2005) ("Habeas petitioners generally cannot raise claims in federal court if those claims were not first exhausted in state court. . . . In order to be exhausted, a federal claim must be fairly presented to the state courts. . . . [I]n order to ensure that state courts have the first opportunity to hear all claims, federal courts 'have required a state prisoner to present the state courts with the ***same*** claim he urges upon the federal courts.' . . . It is well established that when a petitioner has failed to exhaust his claim by failing to fairly present it to the state courts and the state court remedy is no longer available, the failure also constitutes a procedural bar. . . . In such a situation, the Supreme Court has held that the petitioner has failed to properly exhaust his state court remedies and therefore has procedurally defaulted his claims. *O'Sullivan v. Boerckel,* 526 U.S. 838, 848, 119 S.Ct. 1728, 1734, 144 L.Ed.2d 1 (1999)."), *cert. denied,* 547 U.S. 1073, 126 S.Ct. 1828, 164 L.Ed.2d 522 (2006), *with Kelley v. Secretary for the Dep't of Corrections,* 377 F.3d 1317, 1344 & 1351 (11th Cir. 2004) ("[T]he prohibition against raising nonexhausted claims in federal court extends not only to broad legal theories of relief, but also to the specific assertions of fact that might support relief. For example, habeas petitioners may not present particular factual instances of ineffective assistance of counsel in their federal petitions that were not first presented to the state courts. . . . Dismissing a mixed petition is of little utility [] when the claims raised for the first time at the federal level can no longer be litigated on the merits in state court because they are procedurally barred. In such a case, requiring

the petitioner to return to state court only to make a futile application for relief simply delays the federal courts' adjudication of his petition."), *cert. denied,* 545 U.S. 1149, 125 S.Ct. 2962, 162 L.Ed.2d 906 (2005). And, here, Petitioner has couched all of his claims raised in his § 2254 federal petition as constitutional claims (albeit improperly, as described *infra*) yet he has failed to raise every one of those claims (indeed, he has not raised any of those claims) to Alabama's Supreme Court. (*Compare* Docs. 1, 13 & 14 *with* Docs. 11 & 17).

At best, Harris putatively argues, through his principal claim raised in the instant petition, that his failure to exhaust should be excused; however, as discussed parenthetically, Petitioner is wrong.[10] Accordingly, Petitioner has not exhausted his

---

[10] The exhaustion requirement is excused if "there is either an absence of available State corrective process[] or . . . circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1)(B)(i) & (ii). A failure to exhaust has been excused where, because of prior rulings, resort to the state courts would be futile. *See Allen v. State of Alabama*, 728 F.2d 1384, 1387 (11th Cir. 1984). Exhaustion has also been excused where the state has unreasonably delayed in acting on the petitioner's efforts to invoke state remedies or fails to address the petition without explanation. *See, e.g., Hollis v. Davis*, 941 F.2d 1471, 1475 (11th Cir. 1991) ("A federal *habeas* petitioner need not wait until his state petitions for relief are exhausted, if the state court has unreasonably or without explanation failed to address petitions for relief."), *cert. denied*, 503 U.S. 938, 112 S.Ct. 1478, 117 L.Ed.2d 621 (1992); *Cook v. Florida Parole & Probation Comm'n*, 749 F.2d 678, 679 (11th Cir. 1985) ("State remedies will be found ineffective and a federal habeas petitioner will be excused from exhausting them in the case of unreasonable, unexplained state delays in acting on the petitioner's motion for state relief."). Finally, other special or exceptional circumstances may also excuse exhaustion. *See, e.g., Clarke v. Grimes*, 374 F.2d 550, 551 (5th Cir. 1967) ("It is true that under *Fay v. Noia*, the federal trial court has broad discretion to hear a habeas corpus petition though state remedies have not been exhausted, if there are circumstances which demand relief to protect the rights of the prisoner.").

Harris' principal claim raised in his petition—that is, that his Fourteenth Amendment rights to due process and equal protection of the law have been violated due to the failure of the State of Alabama to afford him adequate judicial process to remedy federal constitutional violations in his criminal prosecution—arguably represents his attempt to excuse the exhaustion requirement; however, such attempt need fail. No special circumstances exist in this case (particularly now that Harris has been released and is living in the free world) and there certainly was not an absence of available State corrective process, as Harris' direct appeal was successful, and he was well aware of his ability to collaterally attack his convictions and (Continued)

state remedies and cannot now present these claims "coldly" to the Alabama Supreme Court; therefore, these claims are procedurally defaulted because state procedural rules would bar him from raising these claims in the state courts of Alabama. *Compare McNair, supra,* 416 F.3d at 1302 & 1305 *with Bailey v. Nagle,* 172 F.3d 1299, 1305 (11th Cir. 1999) ("[F]ederal courts may treat unexhausted claims as procedurally defaulted, even absent a state court determination to that effect, if it is clear from state law that any future attempts at exhaustion would be futile."). Accordingly, this Court is barred from reaching the merits of any claims raised by Harris absent Petitioner demonstrating "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman, supra*, 501 U.S. at 750, 111 S.Ct. at 2565.

Petitioner has filed no response to the Respondent's Amended Answer (*see* Doc. 17) in the more than two years since it was filed in this Court (*compare id.* (response to motions filed on October 24, 2019) *with* Docket Sheet (no reply or traverse to the amended response filed by Harris)). And because Harris's petition itself, as amended, contains only a bare cause argument, as he attempts to lay blame for

---

sentences through the filing of a Rule 32 petition. Indeed, Harris filed such a petition and the courts of Alabama stood ready to address his petition had Petitioner paid the filing fee, as ordered; it was only when he did not pay the filing fee that his collateral petition was dismissed. Therefore, Harris' failure to pay the filing fee is the root cause of his collateral petition not being addressed on the merits, not the absence of a corrective procedure or any failure of the state courts to rule.

certain failures at the feet of his appellate attorney,[11] but no argument regarding

prejudice, this Court should conclude that the cause and prejudice exception to the

procedural default doctrine is not applicable in this case. *See Macklin v. Singletary*, 24

F.3d 1307, 1313 (11th Cir. 1994) (in abuse of the writ case, appellate court suggests

that habeas courts need perform no analysis when the petitioner fails to argue an

exception to application of the doctrine), *cert. denied*, 513 U.S. 1160, 115 S.Ct. 1122,

130 L.Ed.2d 1085 (1995).

The fundamental miscarriage of justice/actual innocence exception does not

apply in this case because Petitioner has not satisfied the standard set forth in *Murray v.*

*Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). That standard requires

Harris to show that "a constitutional violation has probably resulted in the conviction of

---

[11]     Again, to the extent Harris has interposed his first claim of his habeas petition as
cause for his procedural default of the other issues he wishes to raise, this attempt fails because
he has not demonstrated interference by State officials that made compliance with the state's
procedural rule impracticable. Instead, as aforesaid, Harris has only himself to blame for not
paying the filing fee necessary to pursue his Rule 32 petition, a collateral attack for which he
retains no constitutional right to counsel. And, with respect to his direct appeal, there was no
impediment erected by State officials preventing Harris (or his appellate attorney) from timely
seeking rehearing and filing a petition for writ of certiorari. Besides, Harris has not raised an
issue (that is, a double jeopardy claim) in his federal petition that is barred from this Court's
merits review and, therefore, the failure to seek rehearing or a writ of certiorari is of no moment.
This is particularly true when it is understood, as explained by the Alabama Court of Criminal
Appeals, that the proper vehicle available to Harris to pursue his "resentencing" claim was
through the filing of a Rule 32 petition, not a direct appeal rehearing request or writ of certiorari
petition. Accordingly, Harris cannot lay blame for failure to assert the resentencing claim on his
appellate attorney (and the default of that claim) due to the failure to file a petition for rehearing
and a writ of certiorari because even if those documents had been timely filed, they could not
have added the resentencing issue because that issue was not asserted in Petitioner's initial
brief on direct appeal (and addressed by the Alabama Court of Criminal Appeals).

As a further aside, even if Harris had directly asserted his double jeopardy claim in his
federal petition, there is no relief that this Court could have granted him. This is because the
state courts had already vacated his possession convictions and sentences. Any suggestion by
Harris that this Court could have ordered his resentencing is simply not true, both because
Harris did not fully exhaust this claim through the available state vehicle of a Rule 32 petition
and because Harris is no longer serving those sentences.

one who is actually innocent." *Id.* at 496, 106 S.Ct. at 2649-2650. To be credible, a claim of actual innocence "requires petitioner to support his allegations of constitutional error with new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial." *Schlup v. Delo,* 513 U.S. 298, 324, 115 S.Ct. 851, 865, 130 L.Ed.2d 808 (1995); *see also id.* at 327, 115 S.Ct. at 867 ("To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence."). "It is important to note in this regard that 'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States,* 523 U.S. 614, 623, 118 S.Ct. 1604, 1611, 140 L.Ed.2d 828 (1998) (citation omitted). Here, Harris has not come forward with any new reliable evidence that establishes his actual factual innocence of attempt to distribute marijuana, attempt to distribute cocaine, or intent to deliver a cellphone to an inmate, for which he was convicted on September 20, 2017. Instead, Petitioner simply takes "issue" with the testimony of numerous prosecution witnesses (*see* Doc. 1, PageID. 15-23); however, the Petitioner's allegations/arguments relative to the identified testimony simply do not support an actual (factual) innocence claim in accordance with *Murray v. Carrier* and *Schlup v. Delo* because they rely on the evidence presented at Petitioner's trial (or the lack of evidence at his trial), not on any "new evidence." Accordingly, this case is not one of those rare cases in which the actual innocence exception is applicable.[12]

---

[12]     The undersigned would parenthetically note that the records supplied by the State in this case, along with relevant caselaw, either refute Harris' principal conclusory allegations or otherwise establish that Harris does not raise claims cognizable in habeas corpus. For instance, to the extent Harris means to assert a freestanding actual innocence claim (*see* Doc. 1, PageID. 14-25), that claim is ***not cognizable*** in this non-capital § 2254 petition, *see,* (Continued)

_e.g., Collins v. Secretary, Dep't of Corrections,_ 809 Fed.Appx. 694, 696 (11th Cir. Apr. 22, 2020), _cert. denied,_ __ U.S. __, 141 S.Ct. 1123, 208 L.Ed.2d 561 (2021), as in making this argument Petitioner does not allege an independent constitutional claim, _see id._ Besides, as previously established, Harris is not actually (factually) innocent of the crimes for which he was convicted by a jury of his peers on September 20, 2017. Next, Harris' claim regarding the denial of counsel to assist in Rule 32 proceedings ("Claim 5") does not state a claim for federal habeas corpus relief inasmuch as "no constitutional right to counsel in a Rule 32 proceeding exists" because "post-conviction proceedings are civil in nature, not criminal[.]" _Smith v. Alabama,_ 2019 WL 7999215, *18 (N.D. Ala. May 7, 2019), _report and recommendation adopted,_ 2020 WL 819271 (N.D. Ala. Feb. 19, 2020), _certificate of appealability denied,_ 2020 WL 8573072 (11th Cir. Sept. 2, 2020), _cert. denied,_ __ U.S. __, 141 S.Ct. 2531, 209 L.Ed.2d 557 (April 19, 2021). As for his claim that his Fourteenth Amendment right to due process was violated because he was denied meaningful access to the courts, this claim does not sound in habeas corpus and would be dismissed. _Compare, e.g., Cruitt v. Alabama,_ 647 Fed.Appx. 909, 909 (11th Cir. Apr. 7, 2016) ("'Federal law opens two main avenues to relief on complaints related to imprisonment: a petition for habeas corpus, 28 U.S.C. § 2254, and a complaint under the Civil Rights Act of 1871, . . . as amended, 42 U.S.C. § 1983.' _Muhammad v. Close,_ 540 U.S. 749, 750, 124 S.Ct. 1303, 1304, 158 L.Ed.2d 32 (2004). Challenges to the validity of confinement or to its duration are within the province of habeas corpus, while requests for relief relating to the circumstances of confinement may be presented in a § 1983 action. _Id._ A claim alleging a denial of access to courts is cognizable under § 1983. _Martin v. Wainwright,_ 526 F.2d 938, 939 (5th Cir. 1976)."), _cert. denied,_ __ U.S. __, 137 S.Ct. 500, 196 L.Ed.2d 411 (2016), _with Griego v. Inch,_ 2019 WL 2093245, *1 (N.D. Fla. Apr. 1, 2019) ("This type of claim [denial of access to the prison law library and to the courts] does not sound in habeas corpus, but in civil rights under 42 U.S.C. § 1983."), _report and recommendation adopted,_ 2019 WL 2090000 (N.D. Fla. May 13, 2019), and _Williams v. McBrayer,_ 2018 WL 1221861, *2 (N.D. Ga. Feb. 12, 2018) ("Next, the undersigned addresses petitioner's claims regarding law library access and grievances. Habeas and civil rights cases are 'mutually exclusive: if a claim can be raised in a federal habeas petition, that same claim cannot be raised in a separate . . . civil rights action.' . . . Because claims regarding law library access and grievances can be raised in a civil rights action, those claims cannot be raised in a habeas petition."), _report and recommendation adopted,_ 2018 WL 1211521 (N.D. Ga. Mar. 8, 2018). Moreover, Harris' first claim—that his Fourteenth Amendment rights to due process and equal protection of the law have been violated due to the failure of the State of Alabama to afford him adequate judicial process to remedy federal constitutional violations in his criminal prosecution—is specious on its face because the State of Alabama actually afforded Petitioner adequate judicial process to remedy any alleged constitutional violations in his criminal prosecution; indeed, his double jeopardy claim on appeal was successful, leading to his possession convictions (and concurrent sentences) being vacated, and he was afforded the opportunity to file a Rule 32 petition (in which he could have raised his "resentencing" claim) but failed to pay the filing fee when required to do so (which led to the dismissal of his state collateral petition). And, finally, to the extent Petitioner contends that his appellate attorney should have raised certain unidentified claims on direct appeal and, as well, should have specifically requested in the brief on direct appeal resentencing by the trial court upon a successful double jeopardy attack, Harris has not and cannot establish both prongs of the _Strickland v. Washington_ standard, _see Strickland v. Washington_, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984) (recognizing that to establish a claim of ineffective assistance of counsel, a petitioner is required to show (1) that his attorney's representation fell below "an objective standard of reasonableness" and (2) that a reasonable probability exists that but for counsel's unprofessional conduct, the result of the proceeding would have been (Continued)

**D.** **Certificate of Appealability.** Pursuant to Rule 11(a) of the Rules

Governing § 2254 Cases, the undersigned recommends that a certificate of

appealability in this case be denied. 28 U.S.C. foll. § 2254, Rule 11(a) ("The district

court must issue or deny a certificate of appealability when it enters a final order

adverse to the applicant."). The habeas corpus statute makes clear that an applicant is

entitled to appeal a district court's denial of his habeas corpus petition only where a

circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1). A

certificate of appealability may issue only where "the applicant has made a substantial

showing of the denial of a constitutional right." 28 U.S.C. § 2243(c)(2). Where, as here,

a habeas petition is being denied on procedural grounds without reaching the merits of

the underlying constitutional claims, "a COA should issue [only] when the prisoner

---

different), with respect to either claim. Regarding the unidentified instances of inadequate
performance by appellate counsel, the undersigned simply notes that appellate counsel was not
constitutionally deficient because an appellate attorney is not required "to raise every 'colorable
claim suggested by a client[.]" *Jones v. Barnes,* 463 U.S. 745, 754, 103 S.Ct. 3308, 3314, 77
L.Ed.2d 987 (1983); *see also Brown v. United States,* 720 F.3d 1316, 1335 (11th Cir. 2013) ("An
attorney is not required under the Constitution or the *Strickland* standards to raise every non-
frivolous issue on appeal[.]"), *cert. denied,* 574 U.S. 828, 135 S.Ct. 48, 190 L.Ed.2d 53 (2014);
*see Heath v. Jones,* 941 F.2d 1126, 1130 (11th Cir. 1991) (recognizing that appellate advocates
do not have to raise every non-frivolous issue on appeal), *cert. denied,* 502 U.S. 1077, 112
S.Ct. 981, 117 L.Ed.2d 144 (1992). Indeed, "'winnowing out weaker arguments on appeal and
focusing on' those more likely to prevail, far from being evidence of incompetence, is the
hallmark of effective appellate advocacy." *Smith v. Murray,* 477 U.S. 527, 536, 106 S.Ct. 2661,
2667, 91 L.Ed.2d 434 (1986). Obviously, Harris' appellate attorney was not incompetent for
failing to assert on appeal issues which the Petitioner cannot even articulate for this Court and
indeed, reasonably focused on the successful double jeopardy claim. As for Harris' suggestion
that his appellate attorney should have requested (in the initial brief on appeal) resentencing
upon a successful showing of a double jeopardy violation, there is simply no prejudice both
because Petitioner could have asserted a resentencing claim in a Rule 32 petition and because
he has not demonstrated that the sentencing guidelines range would have been any different
without consideration of the two possession charges that were vacated ***and*** that the trial court
would have imposed a lesser sentence.

Harris nowhere in his habeas corpus petition (Doc. 1) actually identifies deficient acts by
his trial attorney and, therefore, no discussion is needed in regard to the performance of trial
counsel.

shows . . . that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 1604, 146 L.Ed.2d 542 (2000); *see Miller-El v. Cockrell,* 537 U.S. 322, 336, 123 S.Ct. 1029, 1039, 154 L.Ed.2d 931 (2003) ("Under the controlling standard, a petitioner must 'sho[w] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "adequate to deserve encouragement to proceed further."'"). Inasmuch as petitioner has defaulted the claims he wishes this Court to address pursuant to *O'Sullivan v. Boerckel, supra*, a reasonable jurist could not conclude either that this Court is in error in dismissing the instant petition or that Harris should be allowed to proceed further, *Slack, supra*, 529 U.S. at 484, 120 S.Ct. at 1604 ("Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further.").

Rule 11(a) further provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation. *Brightwell v. Patterson,* CA 11-0165-WS-C, Doc. 14 (Eleventh Circuit order denying petitioner's motions for a COA and to appeal IFP in a case in which this Court set out the foregoing procedure); *see also Castrejon v. United States,* 2011 WL

3241817, *20 (S.D. Ala. June 28, 2011) (providing for the same procedure), *report and recommendation adopted by* 2011 WL 3241580 (S.D. Ala. Jul. 29, 2011); *Griffin v. DeRosa*, 2010 WL 3943702, at *4 (N.D. Fla. Sept. 20, 2010) (providing for same procedure), *report and recommendation adopted sub nom. Griffin v. Butterworth,* 2010 WL 3943699 (N.D. Fla. Oct. 5, 2010).

## CONCLUSION

The Magistrate Judge recommends that Jeffrey Harris' petition for writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254, be dismissed because he has procedurally defaulted any cognizable constitutional claim he has asserted pursuant to *O'Sullivan v. Boerckel*. Petitioner is not entitled to a certificate of appealability and, therefore, he is not entitled to appeal *in forma pauperis*.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D. Ala. GenLR 72(c)(1) & (2). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal

for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

     **DONE** this the 9th day of December, 2021.

s/P. Bradley Murray_____
**UNITED STATES MAGISTRATE JUDGE**
